UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS A. VALENZUELA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>Defendant. | Case No. CV 07-7192 JC<br><br>MEMORANDUM OPINION AND ORDER OF REMAND |

## I. SUMMARY

On November 13, 2007, plaintiff Luis A. Valenzuela ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's applications for benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; November 15, 2007 Case Management Order, ¶ 5.

1

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum and Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On September 30, 2005, plaintiff filed an application for Supplemental Security Income. (Administrative Record ("AR") 24-25). Plaintiff asserted that he became disabled on September 30, 2003, due to post traumatic stress disorder and auditory hallucinations. (AR 72). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) on May 31, 2007. (AR 295-322).

On June 13, 2007, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 3-23). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: obesity and depressive disorder, not otherwise specified (AR 15); (2) plaintiff's impairment or combination of impairments did not meet or medically equal one of the listed impairments (AR 19); (3) plaintiff retained the residual functional capacity to perform work at all exertional levels but (a) was precluded from having contact with the public; (b) was precluded from working at jobs requiring a production rate pace commensurate with production quotas measured periodically throughout the workday but could meet production quotas measured at the end of the workday or workweek; and (c) was permitted to have occasional contact with supervisors and/or co-workers (AR 19);[1] (4) plaintiff could not perform any past relevant work (AR 21); and (5) there were jobs that exist in significant numbers in the national

---

[1] Underlying such residual functional capacity assessment are the ALJ's findings that plaintiff would have (i) mild restrictions of activities of daily living; (ii) moderate difficulties in maintaining social functioning; (iii) moderate difficulties in maintaining concentration, persistence, or pace; and (iv) no episodes of decompensation each of extended duration. (AR 18-19).

2

economy that plaintiff could perform, such as a welder helper and a metal fabricating shop helper (AR 22-23).

The Appeals Council denied plaintiff's application for review. (AR 5-7).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

///
///
///

(4) Does the claimant possess the residual functional capacity to perform his past relevant work?[2] If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.  Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and

---

[2]Residual functional capacity is "what [one] can still do despite [one's] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. § 416.945(a).

4

1 evidence that detracts from the [Commissioner's] conclusion.'" <u>Aukland v.
2 Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting <u>Penny v. Sullivan</u>, 2 F.3d
3 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming
4 or reversing the ALJ's conclusion, a court may not substitute its judgment for that
5 of the ALJ. <u>Robbins</u>, 466 F.3d at 882 (citing <u>Flaten</u>, 44 F.3d at 1457).

**IV. PERTINENT FACTS**

**A. Mental Health Records/Evaluations**

Between April 2003 and July 2006, multiple doctors at the Parole Outpatient Clinic ("POC") evaluated and/or treated plaintiff relating to mental health issues. (AR 214-33). Plaintiff also received mental health treatment while he was in county jail ("CJ") from March 2005 to September 2005. (AR 156-205). The Department of Rehabilitation ("DOR") also evaluated and/or treated plaintiff from at least October 2006 to May 2007. (AR 284-292). Plaintiff's mental health was also evaluated by examining and non-examining consultants. (AR 206-09, 234-47, 250-63).

On July 23, 2003, POC Dr. Baum completed an Initial Psychological Evaluation, in which he noted plaintiff's criminal and substance abuse history and made the following observations: plaintiff's general fund of information and judgment were poor; plaintiff reported having auditory hallucinations "almost all the time"; plaintiff reported having ideas of reference and persecution; and plaintiff complained of experiencing periods of depression. (AR 228-29). Dr. Baum diagnosed plaintiff with schizophrenia, paranoid type; and assessed a Global Assessment of Functioning ("GAF") of 50.[3] (AR 228).

---

[3] A GAF is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. <u>See</u> American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 32 (4th ed. 2000) (hereinafter "DSM IV"). A GAF of 41-50 denotes "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)." DSM IV at 34.

On March 15, 2005, plaintiff complained to CJ Dr. Hsia that he suffered from auditory hallucinations. (AR 197). Dr. Hsia noted that plaintiff had a history of schizophrenia, polysubstance abuse, and noncompliance or partial compliance with medication. (AR 197). She diagnosed plaintiff with polysubstance dependence and rule out "[s]chizophrenia dis[order] vs. [s]ubstance induce psy[chotic] disorder." (AR 197). Dr. Hsia assessed a GAF of 48 and prescribed Abilify. (AR 197).

On April 12, 2005, plaintiff reported to CJ Dr. Hsia that the Abilify caused side effects and that he continued to have auditory hallucinations. (AR 198). Dr. Hsia assessed a GAF of 50 and substituted Seroquel for Abilify. (AR 198).

On May 11, 2005, plaintiff stated to CJ Dr. Hsia that he continued to have auditory hallucinations. (AR 198-99). Dr. Hsia increased the Seroquel dosage. (AR 199).

On July 5, 2005, plaintiff reported to CJ Dr. Hsia that the "voices [were] getting a little better[.]" (AR 200). However, plaintiff complained that he was feeling depressed. (AR 200). Dr. Hsia prescribed Seroquel and Prozac. (AR 200).

On August 10, 2005, plaintiff reported to the CJ that his depression was "getting better with [P]rozac[.]" (AR 201). On August 26, 2005, plaintiff asserted to the CJ that his depressive and psychotic symptoms had become stable with his current medication. (AR 201).

On November 29, 2005, POC Dr. Webb noted that plaintiff had been released from county jail on September 9, 2005 after serving six months for being under the influence of drugs and indecent exposure. (AR 227). He observed that plaintiff's thought processes were linear and organized but that his insight, reasoning, and judgment were poor. (AR 226). Dr. Webb reported that plaintiff complained of auditory hallucinations but found that plaintiff's affect "was not consistent with statements when describing voices." (AR 226). Dr. Webb

6

diagnosed plaintiff with methamphetamine dependence in sustained full remission; rule out psychotic disorder, not otherwise specified; rule out malingering; and adult antisocial behavior. (AR 226). He assessed plaintiff's GAF at 60.[4] (AR 226). The medical records during this period reflected that plaintiff had been prescribed Seroquel and Prozac. (AR 227).

On December 29, 2005, Dr. Bagner, a consultative examining physician, administered a psychiatric evaluation at the behest of the Social Security Administration. (AR 206-10). Plaintiff complained of depression and auditory and visual hallucinations. (AR 206). He reported that he experienced feelings of helplessness and hopelessness and had difficulty with concentration and memory. (AR 206). However, plaintiff acknowledged that he was able to manage self-care and complete activities of daily living without assistance. (AR 207). Dr. Bagner observed that plaintiff's affect was mood congruent; plaintiff's speech was intact and coherent but mildly decreased in rate, rhythm, and volume; plaintiff's thought processes were tight, and there was no flight of thought, looseness of association, thought blocking, or distractibility; plaintiff appeared to have average intelligence; plaintiff's fund of knowledge was intact; plaintiff was able to perform serial threes and serial sevens; plaintiff's insight and judgment were fair; and plaintiff's reality contact appeared normal. (AR 208). Dr. Bagner noted that, despite plaintiff's complaints, there was no evidence of auditory or visual hallucinations during the interview. (AR 208). He diagnosed plaintiff with depressive disorder, not otherwise specified; polysubstance abuse, in early remission; and rule out antisocial personality disorder. (AR 208). Dr. Bagner assessed plaintiff's GAF at

///
///
///

---

[4] A GAF of 51-60 indicates "[m]oderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)." DSM IV at 34.

73.[5] (AR 208). He opined that plaintiff would have zero to mild limitations maintaining concentration and attention; zero to mild limitations completing simple tasks; mild limitations interacting with supervisors, peers, and the public; mild limitations completing complex tasks; mild limitations completing a normal workweek without interruption; and mild to moderate limitations handling normal stresses at work. (AR 209).

On February 7, 2006, POC Dr. Tabori commented that plaintiff had been taking his medication consistently and was adjusting adequately. (AR 223).

On February 13, 2006, Dr. Balson, a non-examining consultative state agency physician, completed a Psychiatric Review Technique form. (AR 234-47). Dr. Balson found that plaintiff suffered from mood disorder, not otherwise specified; and polysubstance abuse, in questionable remission. (AR 234, 237, 242, 246). Dr. Balson opined that plaintiff's impairments were not severe and that plaintiff would have no restrictions of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (AR 234, 244).

On April 12, 2006, plaintiff reported to POC Dr. Chase that he had been doing well on medication but still experienced occasional auditory hallucinations. (AR 221). Dr. Chase diagnosed plaintiff with schizophrenia, "par type" in remission. (AR 221).

On May 12, 2006, plaintiff reported to POC Dr. McCarthy that Prozac was very effective in alleviating his depression and that Seroquel caused side effects. (AR 220). Dr. McCarthy noted that plaintiff's thought processes were logical and goal-directed but that plaintiff reported ongoing auditory hallucinations. (AR 220). She diagnosed plaintiff with schizoaffective disorder, depressed type

---

[5] A GAF of 71-80 indicates that "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors (*e.g.*, difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (*e.g.*, temporarily falling behind in schoolwork)." DSM IV at 34.

8

(provisional). (AR 220). Dr. McCarthy renewed plaintiff's prescription for Prozac and also prescribed Risperdal. (AR 220).

On June 19, 2006, plaintiff reported to Dr. McCarthy that his auditory hallucinations remained unchanged. (AR 219). Dr. McCarthy diagnosed plaintiff with schizoaffective disorder, depressed; and prescribed Geodon and Prozac. (AR 219).

On July 17, 2006, plaintiff reported that Geodon was "better than the other stuff" and that his auditory hallucinations had improved overall. (AR 217). Plaintiff asserted, however, that his auditory hallucinations had become severe in the last day or two after watching horror movies and arguing with his girlfriend. (AR 217). Dr. McCarthy diagnosed plaintiff with schizoaffective disorder, depressed. (AR 217). She increased plaintiff's prescription for Geodon and prescribed Prozac at the same dosage as before. (AR 217).

On October 24, 2006, DOR Dr. Pagel administered a psychological evaluation. (AR 288-92). Plaintiff reported to Dr. Pagel that he had been diagnosed with post traumatic stress disorder and "low level" schizophrenia. (AR 289). Plaintiff also asserted that he continued to experience auditory hallucinations. (AR 289). After conducting several psychological tests (*i.e.*, Wechsler Adult Intelligence Scale - Revised; Raven's Progressive Matrices; Wide Range Achievement Test - Revised), Dr. Pagel determined that plaintiff was of average to superior intelligence. (AR 290-91). He noted, however, that plaintiff's academic achievements were in the average range. (AR 291). Dr. Pagel diagnosed plaintiff with methamphetamine abuse in stated remission; adjustment disorder with mixed features including depression and anxiety; post traumatic stress disorder with symptoms of depression; psychotic disorder, not otherwise specified (hearing voices); and personality disorder with mixed features including dependent, avoidant and antisocial behaviors. (AR 291). Dr. Pagel opined that plaintiff appeared ready for vocational planning and capable of further education

and training. (AR 292). He further noted that plaintiff should avoid work where alcohol or substance use was encouraged. (AR 292).

On October 25, 2006, Dr. Morgan, a non-examining consultative state agency physician, completed a Psychiatric Review Technique form.[6] (AR 253-63). Dr. Morgan found that plaintiff suffered from schizoaffective disorder, depressed; mood disorder, not otherwise specified; and a long history of polysubstance abuse, in questionable remission. (AR 253, 255, 256, 259). Dr. Morgan opined that plaintiff would have mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace.[7] (AR 261). Dr. Morgan also completed a Mental Residual Functional Capacity Assessment form, in which he found that plaintiff had moderate limitations in the following areas: ability to understand, remember, and carry out detailed instructions; ability to work in coordination with or proximately to others without being distracted by them; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to accept instructions and respond appropriately to criticism from supervisors; ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and ability to respond appropriately to changes in the work setting. (AR 250-52). He also determined that plaintiff was not significantly limited in all other areas. (AR 250-51). Based on these findings, Dr. Morgan concluded that plaintiff was capable of performing "AT LEAST simple repetitive tasks, in a work setting that involves limited contact with others." (AR 252).

---

[6] Dr. Morgan reviewed plaintiff's medical records through July 17, 2006. (AR 263).

[7] Dr. Morgan noted that there was insufficient evidence to establish future episodes of decompensation. (AR 261).

10

### B. Vocational Expert's Testimony

At the administrative hearing in this matter, the vocational expert opined that a hypothetical individual who (i) had no physical limitations; (ii) had no contact with the public; (iii) had occasional contact with supervisors and coworkers; and (iv) could not work at jobs requiring a production rate pace commensurate with production quotas measured periodically throughout the workday, but could meet production quotas measured at the end of the workday or workweek could work as a welder helper (6,200 local positions, 225,000 national positions) and as a metal fabricating shop helper (6,100 local positions, 122,000 national positions). (AR 318-20).

The vocational expert also opined that a hypothetical individual who, because of hearing voices, could not maintain concentration, persistence, and pace for five days a week, eight hours a day, at the level of substantial gainful activity, could not perform any work. (AR 320).

## V. DISCUSSION

### A. A Remand Is Appropriate Because the ALJ Erroneously Failed to Explain The Weight, If Any, Given to Certain Findings of a State Agency Physician and the Court Cannot Find Such Error to Be Harmless

Plaintiff contends, *inter alia*, that the ALJ erroneously failed to include in his residual functional capacity assessment and in the hypothetical posed to the vocational expert, certain limitations on plaintiff's ability to function as determined by Dr. Morgan, a state agency physician. (Plaintiff's Motion at 7). In significant part, plaintiff points to Dr. Morgan's opinion that plaintiff is moderately limited in his ability to understand, remember and carrying detailed instructions. (Plaintiff's Motion at 7) (citing AR 250-51).

An ALJ is not bound by any findings by a state agency medical consultant. 20 C.F.R. § 416.927(f)(2)(i). However, because these agency physicians are

highly qualified and are also experts in Social Security disability evaluations, the ALJ "must consider" findings of an agency physician. 20 C.F.R. § 416.927(f)(2)(i). When the ALJ considers the findings of a state agency medical consultant, the ALJ evaluates the findings using factors such as medical specialty and expertise in social security rules, supporting evidence in the case record, supporting explanations provided by the physician, and any other factors relevant to the weighing of the opinions. 20 C.F.R. § 416.927(f)(2)(i). Furthermore, the ALJ "must explain in the decision" the weight given to the agency physician's opinion. See SSR 96-6p (ALJ may not ignore state agency physician's opinions and must explain weight given to such opinions in their decisions).

Here, although the ALJ expressly referenced Dr. Morgan's foregoing opinions in his summary of the medical evidence (AR 17), the ALJ did not explain the weight, if any, given to such opinions. The ALJ did *not* include such limitations in his residual functional capacity assessment. Although it might otherwise be reasonable to infer from these facts that the ALJ silently rejected Dr. Morgan's opinions in this regard – which was within the ALJ's province – the Court cannot make such an inference here, because the ALJ stated that his residual functional capacity assessment was "fully supported" by *inter alia*, opinions of the treating, examining and non-examining physicians. (AR 21). Thus, the Court cannot discern whether the ALJ's failure to include the limitations identified by Dr. Morgan in the residual functional capacity assessment was an oversight or an intentional omission. On remand, the ALJ should clarify the matter.

Because at this juncture, the Court cannot exclude the probability that the ALJ intended to include in his residual functional capacity assessment, the limitations regarding plaintiff's ability to understand, remember, and carry out detailed instructions, the Court cannot find the ALJ's failure to explain the weight given to Dr. Morgan's opinion to be harmless. As plaintiff notes, the limitations identified by Dr. Morgan regarding plaintiff's ability to understand, remember and

carry out detailed instructions were not included in the hypothetical question posed to the vocational expert upon whose opinion the ALJ relied in making the step five determination. A vocational expert's testimony may constitute substantial evidence of a claimant's ability to perform work which exists in significant numbers in the national economy when the ALJ poses a hypothetical question that accurately describes all of the limitations and restrictions of the claimant that are supported by the record. See Tackett, 180 F.3d at 1101. If the hypothetical to the vocational expert does not reflect all the claimant's limitations and/or is not supported by evidence of record, the vocational expert's testimony has no evidentiary value. Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (citation and internal quotation marks omitted). Here, both jobs identified by the vocational expert – welder helper and metal fabricating shop helper – require the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." See Dictionary of Occupational Titles §§ 619.686-022, 819.687-014, 1991 WL 681631, 685229. The Court therefore cannot conclude that the vocational expert would have opined (or that the ALJ relying upon such opinion would have determined) that plaintiff could perform work which exists in significant numbers in the national economy if the ALJ had included in the hypothetical question, plaintiff's asserted limitation in understanding and carrying out detailed instructions. Accordingly, the Court cannot find the ALJ's error was harmless.

///
///
///
///
///
///
//

13

## VI. CONCLUSION[8]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed, and this matter is remanded for further administrative action consistent with this Opinion.[9]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: November 26, 2008

                                                           /s/
                                  Honorable Jacqueline Chooljian
                                  UNITED STATES MAGISTRATE JUDGE

---

[8]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[9]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).